IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICK DONNELLY, ) | |
| ) | |
| *Plaintiff*, ) | **Case No.** |
| ) | |
| vs. ) | |
| ) | |
| WEST MIFFLIN BOROUGH, ) | |
| ) | |
| *Defendant*. ) | **JURY TRIAL DEMANDED** |
| ) | |

## COMPLAINT IN CIVIL ACTION

Plaintiff, Patrick Donnelly, respectfully requests this Honorable Court to enter judgement in his favor, and against Defendant, West Mifflin Borough and prays for relief as follows:

## PARTIES

1. Plaintiff, Patrick Donnelly (hereinafter, "Plaintiff"), is an adult individual who resides in West Mifflin, Pennsylvania 15122.

2. Defendant, West Mifflin Borough (hereinafter, "Defendant"), is a self-governing municipal entity, equivalent to a town or small city, with a residential area. Defendant's primary place of business or administrative building is located at 1020 Lebanon Road, West Mifflin, Pennsylvania 15122. Defendant's Public Works Department, where Plaintiff worked, is located at 750 Saint Agnes Lane, West Mifflin, Pennsylvania 15122 (hereinafter, the "Facility").

## JURISDICTION AND VENUE

**A.     This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331 and Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367.**

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (hereinafter, the "Federal Question Jurisdiction") as Plaintiff is advancing claims under the Family and Medical

Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* (hereinafter, the "FMLA") (Plaintiff's claims arising under the FMLA are identified as the "Federal Law Claims").

4. Plaintiff is also advancing claims under the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951, *et seq.* (hereinafter, the "PHRA"), and asserts Pennsylvania state common law claims for intentional infliction of emotional distress (hereinafter, the "State Law Claims"). This Court may exercise supplemental jurisdiction over the State Law Claims pursuant to 28 U.S.C. § 1367(a) as the Federal Law Claims and the State Law Claims share operative facts that support the corresponding causes of action within the Federal Law Claims and the State Law Claims. Further, the operative facts between the Federal Law Claims and the State Law Claims mirror one another to such a degree that they form the "same case or controversy" under Article III § 2 of the United State Constitution which further supports this Court's exercise of supplemental jurisdiction over the State Law Claims.

**B.   The United States District Court for the Western District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

5. Venue is proper in the United States District Court for the Western District of Pennsylvania, Pittsburgh Division (hereinafter, the "Western District") as a substantial part of the events and omissions giving rise to the Federal Law Claims and State Law Claims occurred within this judicial district. Specifically, these events and omissions occurred within Allegheny County, Pennsylvania which is one of the counties encompassed by the Western District. This matter is properly before the Pittsburgh Division of the Western District given the conduct complained of herein arose in Allegheny County, Pennsylvania and conduct arising within Allegheny County is docketed within the Pittsburgh Division of the Western District pursuant to LCvR 3.

**PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS**

6. In or around April 2015, Plaintiff began working for Defendant in the position of Laborer in the Public Works Department, where he was tasked with performing refuse pickups.

7. In or around 2016, Plaintiff bid on and was awarded the position of Machine Operator where he remained until his wrongful termination in August of 2022.

8. Plaintiff was diagnosed with post-traumatic stress disorder and a general anxiety disorder (hereinafter, the "Disabilities") in 2017 after experiencing acute symptoms as a result of the trauma he endured over the sudden death of his first cousin in a local industrial accident. Plaintiff's cousin was asphyxiated by a noxious gas while he was working on an elbow joint he was removing from an underground location with heavy machinery.

9. The traumatic death of Plaintiff's cousin haunted him in that he lived in constant fear that a similar fate would occur to him and thereby Plaintiff was often fearful that his work was putting him in danger.

10. At all times relevant, Defendant was aware of Plaintiff's Disabilities as his treating physician explicitly advised Defendant's Manager of the same in 2018 and further advised that Plaintiff may from time-to-time need to invoke his right to take leave under FMLA.

11. In addition to Plaintiff's medical, therapeutical, and pharmacological treatment of his Disabilities by his treating physicians, Plaintiff began self-medicating with alcohol in a desperate attempt to dull the acute symptoms he was experiencing.

12. For years, Plaintiff experienced continual periods of emotional stability followed by periods of emotional instability, where these periods of instability further caused Plaintiff to have intense concern about his physical safety while operating machinery, which was a frequent part of his job duties with Defendant.

13. From 2018 through 2021, Plaintiff invoked his right to take leave for twelve weeks each year to further his treatment and to continue to try to address his Disabilities. Plaintiff did in fact use several weeks of FMLA in 2022 before his termination.

14. In or around August of 2022, the anniversary month of the death of Plaintiff's cousin, Plaintiff experienced an intense exacerbation of symptoms associated with his Disabilities.

15. As had become Plaintiff's occasional habit in times of extreme duress, he overconsumed alcoholic beverages one evening, leading into the early morning hours of the day when he was to report to the Facility for work.

16. That day, Plaintiff reported to the Facility at approximately 6:30 a.m., where it was determined he emitted an odor of alcohol and therefore was forced to undergo a breathalyzer test, which revealed a recordable level of blood alcohol content. Plaintiff was terminated immediately.

17. The immediate termination of Plaintiff came as a complete shock, because Plaintiff was aware of several instances of alcohol abuse by co-workers, while at work, that were well known by Defendant and these employees were not treated in a similar fashion to Plaintiff.

18. For instance, in the winter of 2020, Defendant's employee, Kevin Vargo (hereinafter, "Mr. Vargo") was so heavily under the influence of alcohol during working hours, that when attempting to leave the Facility to perform snow removal duties in one of Defendant's vehicles, Plaintiff was so alarmed that he reported the same to his representative at the Teamsters Union, Local 636, and other supervisors in an attempt to stop Mr. Vargo from operating a motor vehicle. Upon Defendant learning about Mr. Vargo's state, they dismissed Mr. Vargo for the day and then had Plaintiff drive Mr. Vargo's personal vehicle to his residence.

19. Mr. Vargo was never further disciplined, he was never breathalyzed, and he was not terminated for being intoxicated while working.

20. A second pertinent example of how Plaintiff was treated differently than his co-workers is in or around early 2022, Luke Miller (hereinafter, "Mr. Miller") was an employee of Defendant's who frequently arrived at work already intoxicated, to a degree where he would periodically vomit.

21. On one occasion, while working, Mr. Miller wrecked his vehicle on railroad tracks leading to the Facility due to being inebriated. Defendant was aware of the incident as it had to retrieve Mr. Miller' vehicle from the accident scene.

22. Mr. Miller never had to undergo a breathalyzer, he was not disciplined in any manner for his alcohol-related conduct, let alone terminated.

## COUNT I
## RETALIATORY TERMINATION IN VIOLATION OF THE FMLA
## 29 U.S.C. § 2601 et seq.

23. Plaintiff incorporates the allegations contained in the paragraphs set forth above, as if fully set forth at length herein.

24. The FMLA was enacted to provide entitled employees to take reasonable leave for medical reasons and familial events while still balancing and accommodating the interests of the employer. *See* 29 U.S.C. § 2601, *et seq*.

25. As such, the FMLA entitles qualified employees of specific employers to take twelve (12) weeks of job-protected leave following the occurrence of various circumstances as delineated within the statute. *See* 29 U.S.C. § 2601, *et seq*.

26. For purposes of the FMLA, an "eligible employee" means an employee who has been employed "(i) for at least 12 months by the employer with respect to whom leave is requested; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A).

27. In turn, the FMLA defines an "employer" to mean "any person engaged in commerce or an in any industry affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A).

28. Additionally, the definition of an "employee" under the FMLA is not satisfied if any employee works at a worksite of an employer in which such employer does not employ at least 50 employees within 75 miles of such worksite. 29 U.S.C. § 2611(2)(B). In other words, an employer must employ at least 50 employees within a range of 75 miles of the employee's worksite for an employee to be entitled to FMLA.

29. Defendant is a Borough in the United States Commonwealth of Pennsylvania, which is a self-governing municipal entity, with a developed business district and concentration of public and commercial office buildings in Pennsylvania. Upon information and belief, the Defendant employs fifty (50) or more employees each working day during each of twenty (20) or more calendar workweeks in the calendar year within a 75-mile range of the Facility.

30. Therefore, Defendant is an employer pursuant to 29 U.S.C. § 2611(4)(A).

31. For approximately eight (8) years, Plaintiff had been working for Defendant as a full-time salaried employee. For the years that Plaintiff requested the FMLA Leave, he had worked for more than the required 1,250 hours of service in the previous 12-month period. Therefore, Plaintiff is an "employee" pursuant to 29 U.S.C. § 2611(4)(A).

32. Given the above, Plaintiff was entitled to twelve (12) workweeks of leave pursuant to the FMLA for qualified health and familial related circumstances in the instances that he took FMLA leave. The FMLA delineates various approved scenarios for leave under the FMLA and a

serious health condition is a specifically permitted circumstance within the plain language of the FMLA itself. 29 U.S.C. § 2612(a)(1)(A).

33. As such, Plaintiff was appropriately entitled to utilize leave under the FMLA given his employment status with Defendant and the corresponding circumstances surrounding Plaintiff's need for leave.

34. Subsequent to the use and invocation of an individual's rights under the FMLA, the FMLA makes it unlawful for "any employer to discharge or in any other manner discriminate against any individual for opposing made unlawful". 29 U.S.C. § 2615(A)(2). This is commonly referred to as "retaliation" within the FMLA context. *See Ross v. Gilhuly*, 755 F.3d 185, 191 (3d Cir. 2014) citing *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294.

35. To establish a *prima facie* FMLA retaliation claim, a Plaintiff must show that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights. *Ross*, 755 F.3d at 193.

**A.    Plaintifff invoked his right to FMLA-qualifying leave.**

36. In 2018 through 2021, Plaintiff received the necessary approvals which authorized him to take and utilize FMLA Leave in each of these years. Plaintiff took FMLA leave in each year from 2018 through 2021.

**B.    Plaintiff suffered an adverse employment decision.**

37. In or around August of 2022, Plaintiff was terminated immediately after failing a breathalyzer when arriving to the Facility one morning under the influence of alcohol. Termination being the ultimate adverse employment decision.

38. Defendant had previously and on more than one occasion known of other employees who were intoxicated while at work and did not breathalyze them, discipline them or terminate them.

**C.     The adverse action was causally related to his invocation of rights.**

39. A sufficient causal nexus readily exists between the Plaintiff's use of the FMLA leave yearly and the retaliatory termination of Plaintiff. This nexus is heightened after consideration of the fact that Plaintiff's similarly situated coworkers who had not invoked their rights pursuant to the FMLA were treated more favorably than Plaintiff insofar as these individuals were not terminated.

40. As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered damages that include, but are not limited to, lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff, Patrick Donnelly, seeks the damages set forth in the ad damnum clause of this Complaint, infra.

## COUNT II
## INTERFERENCE WITH RIGHTS IN VIOLATION OF THE FMLA
### 29 U.S.C. § 2601 *et seq.*

41. Plaintiff incorporates the allegations contained in the paragraphs set forth above, as if fully set forth at length herein.

42. To make a claim of interference under the FMLA, a plaintiff must establish: (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the

plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA. *Johnson v. Cmty. Coll. of Allegheny Cnty.*, 566 F. Supp. 2d 405, 446 (W.D. Pa. 2008); see also *Sommer v. The Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006) (noting that an interference claim requires an employee to show that he was not only entitled to FMLA benefits but that he was denied those benefits).

43. Under an interference claim, "the employee need not show that he was treated differently than others [, and] the employer cannot justify its actions by establishing a legitimate business purpose for its decision." *Sommer*, 461 F.3d at 399 (3d Cir. 2006) (alteration in original) (internal quotation marks omitted). Also, "[b]ecause the FMLA [interference claim] is not about discrimination, a *McDonnell-Douglas* burden-shifting analysis is not required." *Id*.

**A.     Plaintiff was an eligible employee under the FMLA.**

44. During the years 2018-2021, every year Plaintiff requested and took twelve (12) weeks of approved FMLA Leave to help treat his Disabilities.

**B.     Defendant was an employer subject to the FMLA's requirements.**

45. Defendant is a Borough in the United States Commonwealth of Pennsylvania, which is a self-governing municipal entity, with a developed business district and concentration of public and commercial office buildings, in Pennsylvania. Upon information and belief, the Defendant employs fifty (50) or more employees each working day during each of twenty (20) or more calendar workweeks in the calendar year within a 75-mile range of the Facility.

46. Therefore, Defendant is an employer pursuant to 29 U.S.C. § 2611(4)(A).

### C. Plaintiff was entitled to FMLA leave.

47. For approximately eight (8) years, Plaintiff worked for Defendant as a full-time salaried employee. For the years that Plaintiff requested the FMLA Leave, he had worked for more than the required 1,250 hours of service in the previous 12-month period. Therefore, Plaintiff is an "employee" pursuant to 29 U.S.C. § 2611(4)(A).

48. Given the above, Plaintiff was entitled to twelve (12) workweeks of leave pursuant to the FMLA for qualified health and familial related circumstances in the instances that he took FMLA leave. The FMLA delineates various approved scenarios for leave under the FMLA and a serious health condition is a specifically permitted circumstance within the plain language of the FMLA itself. 29 U.S.C. § 2612(a)(1)(A).

### D. Plaintiff gave notice to the Defendant of his intention to take FMLA leave.

49. For approximately five (5) years, Plaintiff routinely exercised his rights pursuant to the FMLA and Defendant reasonably anticipated Plaintiff to continue to exercise his rights when it decided to terminate his employment.

### E. Plaintiff was denied benefits to which he was entitled under the FMLA.

50. In or around August of 2022, Defendant unlawfully terminated Plaintiff's employment when he arrived intoxicated to work, thereby denying him the ability to take any FMLA leave to deal with his ongoing post-traumatic stress disorder and anxiety disorder.

51. As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered damages that include, but are not limited to, lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff, Patrick Donnelly, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT III
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### IN VIOLATION OF PENNSYLVANIA COMMON LAW

52. Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

53. Pennsylvania recognizes the tort of outrageous conduct causing severe emotional distress. *Johnson vs. Caparelli* (1993) 425 Pa. Super. 404, 411.

54. To establish a cause of action for intentional infliction of emotional distress, a plaintiff must demonstrate that a defendant meets the following criteria: "(1) the defendant's actions were extreme or outrageous; (2) the defendant's actions were intentional or reckless; and (3) the defendant's actions caused severe emotional distress to another individual. *See*, *Holt vs. N.W. Training Partnership* (1997) 694 A.2d 1134, 1141.

**A.     Defendant's Actions Were Extreme or Outrageous.**

55. As set forth above, Defendant treated Plaintiff, who was already in an extremely vulnerable state given the post-traumatic stress disorder and general anxiety disorder together with the escalating symptoms from these disorders, in an outrageous fashion by immediately terminating him, with no warning, from his long-term job for actions that were not considered terminatable offences for other employees in the past by Defendant.

**B.     Defendants Actions Were Intentional and Reckless.**

56. As set forth above, Defendant's callous nature of immediate termination of Plaintiff was insensitive and cruel to Plaintiff and can be interpreted no other way other than as intentional and reckless on its face.

11

**C.     Defendant's Actions Caused Severe Emotional Distress to Plaintiff.**

57.     Plaintiff losing his job in the manner set forth above caused Plaintiff an exacerbation of the symptoms of his Disabilities which in turn caused Plaintiff severe emotional distress.

58.     As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered damages that include, but are not limited to, lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff, Patrick Donnelly, seeks the damages set forth in the ad damnum clause of this Complaint, *infra*.

## *AD DAMNUM* CLAUSE AND REQUEST FOR RELIEF

Plaintiff, Patrick Donnelly, respectfully requests this Honorable Court to enter judgment in his favor, and against Defendant, Borough of West Mifflin, and prays for relief as follows:

1.     Declare and find that Defendant committed the following act:

　　　i.     Violated the FMLA in retaliating against Plaintiff with adverse employment actions because he had invoked his rights under the FMLA;

　　　ii.    Violated the FMLA by interfering with rights afforded to Plaintiff and protected by the FMLA; and

　　　iii.   Intentionally inflicted emotional distress upon Plaintiff in violation of Pennsylvania common law.

2. Award compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses, including suffering, mental anguish, inconvenience, and loss of enjoyment of life;

3. Award equitable relief in form of back pay and front pay;

4. Award punitive damages sufficient to deter Defendant from engaging in future conduct of a similar nature;

5. Award attorney's fees; and/or

6. Award pre-judgment and continuing interest as calculated by the Court.

**TRIAL BY JURY IS DEMANDED**

                                            Respectfully submitted,

                                            **THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: July 30, 2024                        By: _____
                                            Erik M. Yurkovich (Pa. I.D. No. 83432)

                                            The Workers' Rights Law Group, LLP
                                            Foster Plaza 10
                                            680 Andersen Drive, Suite 230
                                            Pittsburgh, PA 15220
                                            Telephone: 412.910.8057
                                            Fax: 412.910.7510
                                            erik@workersrightslawgroup.com

                                            *Counsel for Plaintiff, Patrick Donnelly*